OPINION OF THE COURT
Timothy J. Walker, J.
Procedural History
In July 2006, defendant Terry A. McRae borrowed $45,000 from First Franklin, a Division of National City Bank of Indiana, and signed a promissory note providing for monthly payments over 30 years to First Franklin (the note). This debt was secured by a mortgage on defendant’s real property located in the Town of Almond, New York, recorded in the Allegany County Clerk’s Office on July 11, 2006 (mortgage). Thereafter, defendant defaulted on the loan and on January 21, 2009, plaintiff commenced this foreclosure action by filing a summons and complaint (in which it alleges, inter alia, that it is the owner and holder, by assignment, of the mortgage and the note).
Thereafter, plaintiff made an application for an order of reference. By order dated September 8, 2009, this court denied the motion, without prejudice, on the following grounds: (1) plaintiff failed to submit evidence of the proper assignment or delivery of the mortgage and/or note; and (2) plaintiff failed to submit evidence of service of the 90-day notice required by RPAPL 1304 (exhibit A attached hereto). In response thereto, plaintiff filed a subsequent application, in which it claimed it cured these deficiencies. Plaintiff provided the court with sufficient proof that it timely served the 90-day notice required by RPAPL 1304. However, and for the reasons stated in this court’s November 5, 2009 decision and order (exhibit B attached hereto), plaintiff failed to cure the deficiency as to the assignment of the mortgage and the note.
On or about December 7, 2009, plaintiff filed the within motion for an order for relief to reargue, requesting that the court reconsider the evidence before it on the issue of the assignment.
For the reasons which follow, the motion to reargue is granted, but the court’s prior order and decision on standing shall remain undisturbed.
The Significance of Standing in Foreclosure Litigation — Legislative History
In 2008, New York enacted comprehensive subprime lending reform legislation (see L 2008, ch 472). One of the new laws *249 added was CPLR 3408. Pursuant thereto, for residential foreclosure actions involving a high-cost home loan created between January 1, 2003 and September 1, 2008, or a subprime, or nontraditional loan where the defendant is a resident of the property, the court must hold a voluntary conference within 60 days after the date proof of service of the foreclosure is filed with the county clerk, or on an adjourned date agreed to by the parties, if the defendant homeowner requests a conference. The purpose of the conference is to allow the parties to reach agreement on an alternative to foreclosure. Likewise, the Real Property Actions and Proceedings Law was amended to require the plaintiff in a foreclosure action to affirmatively allege that it owns and holds the note and mortgage, or has been delegated authority by the owner to foreclose (RPAPL 1302).
While this court has interpreted CPLR 3408 as requiring the parties to act in good faith during the mandatory settlement conference process, in late 2009, the Legislature amended CPLR 3408 to expressly require good faith negotiations. In sponsoring the 2009 amendment, both the Assembly and Senate found that “[a]s the mortgage crisis has worsened ... it has become evident that more must be accomplished to protect New Yorkers in these difficult times and beyond.” (Senate Mem in Support, Bill Jacket, L 2009, ch 507, 2009 McKinney’s Session Laws of NY, at 1842; Assembly Mem in Support, Bill Jacket, L 2009, ch 507.)
Previously (in July 2006), the Legislature enacted the Home Equity Theft Prevention Act, which amended certain sections of the New York Banking Law, RPAPL and Real Property Law (L 2006, ch 308). From the language of the amendments, it is clear that the Legislature expanded protections to homeowners in the unfortunate throes of foreclosure actions. For example, in Real Property Law § 265-a, added by section 3 of the Act, the Legislature declared that “it is the expressed policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of home ownership” (Real Property Law § 265-a [1] [b]). Similarly, in relevant part, section 3 of the Act added that “[t]he intent and purposes of this section are to . . . ensure, foster and encourage fair dealing in the sale and purchase of homes in foreclosure or default . . . and to preserve and protect home equity for the homeowners of this state” (Real Property Law § 265-a [1] [d]).
Consistent with the intentions and purposes stated in section 3 of the Act, section 4 of the Act added new section 1303 to the *250 RPAPL, regarding required notices in foreclosure actions. Effective February 1, 2007, the foreclosing party in a mortgage foreclosure action (similar to plaintiff herein) is required to provide a statutorily specific notice to the mortgagor/homeowner regarding information and assistance about the foreclosure process. Discussion of Applicable Law
It is well settled that, in order to establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant’s default in payment (see Household Fin. Realty Corp. of N.Y. v Winn, 19 AD3d 545 [2d Dept 2005]). Thus, foreclosure of a mortgage may be brought by one who has title (i.e., standing) when the action is commenced. (Mortgage Elec. Registration Sys., Inc. v Coakley, 41 AD3d 674 [2d Dept 2007]; RPAPL 1302.) A mortgage can be assigned in two ways — by the delivery of the bond and mortgage by the assignor to the assignee with the intention that all ownership interests are thereby transferred, or by a written instrument of assignment. (Fryer v Rockefeller, 63 NY 268 [1875]; Curtis v Moore, 152 NY 159 [1897]; see generally 78 NY Jur 2d, Mortgages and Deeds of Trust § 272.)
In this case, the complaint was prepared and verified by plaintiffs attorneys, who allege “upon information and belief’ that “Plaintiff is the holder of a Note and Mortgage being foreclosed.” (Complaint para First.) There can be no valid line of reasoning that this statement satisfies the requirements of RPAPL 1302.
Plaintiff relies further upon a written instrument of assignment — not physical delivery of the note and the mortgage. First Franklin purported to assign the mortgage and the note to plaintiff by an “Assignment of Mortgage,” dated January 20, 2009 (the purported assignment). The purported assignment provides, in relevant part, as follows:
“Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor’s beneficial interest under the Mortgage.” (Emphasis added.)
As the above-quoted language clearly indicates, it does not assign the note or the underlying obligation. Indeed, the operative language ends with the assignor assigning its “beneficial *251 interest under the Mortgage” alone, with no reference to the debt.
By contrast, Real Property Law § 258 (schedule O, statutory form I) contains a form assignment of mortgage which clearly assigns both the mortgage and the underlying debt, as follows: “assignor . . . hereby assigns ... a certain mortgage . . . together with the bond or obligation described in said mortgage, and the moneys due and to grow due thereon with interest . . . .” (Emphasis added.)
While an assignor is not required to use schedule O, statutory form I, if it intends to assign the mortgage and the underlying debt, it is well advised to employ language that unambiguously does so.
The purported assignment continues with the following language, which similarly fails to assign the underlying debt and instead confirms that the assignment is limited to the mortgage: “TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.”
By way of the September 8, 2009 order, this court previously determined that plaintiff lacked standing, because it failed “to submit evidence of proper assignment/delivery of mortgage and note.” Thereafter, plaintiff submitted a second copy of the note, which for the first time contained an endorsement by First Franklin, a Division of National City Bank of Indiana, to First Franklin Financial Corporation, and an endorsement in blank. by First Franklin Financial Corporation. The endorsement in blank, however, is undated. In stark contrast, the copy of the note attached to the complaint bears no such endorsements. Obviously, the endorsements were made in response to the September 8, 2009 order, which postdate the commencement of this case (in January 2009), and are ineffective. (Mortgage Elec. Registration Sys., Inc. v Coakley, 41 AD3d at 674; see also Kluge v Fugazy, 145 AD2d 537 [2d Dept 1988] [absent assignment or delivery of the note, the assignment of the mortgage is a nullity].) There being no evidence that the endorsements were made prior to the commencement of the action, plaintiff failed to establish that it was in possession of the note at the time it commenced this action.
A plaintiff seeking judicial redress must have standing before this court. “If standing is denied, the pathway to the courthouse is blocked” {Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 812 [2003], cert denied 540 US 1017 [2003]). *252 “Standing . . . requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant’s request” (Caprer v Nussbaum, 36 AD3d 176, 182 [2d Dept 2006]).
Although recent decisions by the Second Department have held that a defendant waives standing where it is not raised in the answer or pre-answer motion to dismiss (see Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 244 [2d Dept 2007]; HSBC Bank, USA v Dammond, 59 AD3d 679, 680 [2d Dept 2009]; Countrywide Home Loans, Inc. v Delphonse, 64 AD3d 624, 625 [2d Dept 2009]), those cases are distinguishable. In both Mastropaolo and Delphonse, the defendants filed answers containing either counterclaims or affirmative defenses, without asserting a standing defense (see Mastropaolo, 42 AD3d at 240; Delphonse, 64 AD3d at 625). In so doing, the defendants acknowledged that the plaintiff was a proper party for the prosecution of those foreclosure actions. By stark contrast, defendant has not appeared or filed an answer and therefore has not waived the right to challenge plaintiffs standing. This court’s prior decision is also distinguishable from Mastropaolo, because the court dismissed the case without prejudice, which would allow plaintiff, should it still hold the note and mortgage, to refile the action (see Mastropaolo, 42 AD3d at 241; Deutsche Bank Natl. Trust Co. v Abbate, 25 Misc 3d 1216[A], 2009 NY Slip Op 52154[U], *4 [Sup Ct, Richmond County 2009]; Wells Fargo Bank, N.A. v Riley, 23 Misc 3d 1107[A], 2009 NY Slip Op 50616[U] [Sup Ct, Westchester County 2009]; Citigroup Global Mkts. Realty Corp. v Bowling, 25 Misc 3d 1244[A], 2009 NY Slip Op 52567[U] [Sup Ct, Kings County 2009]).
Today, with multiple (and often unrecorded) assignments of mortgage obligations and multiple securitizations often related to the same debt, the courts should carefully scrutinize the status of parties who claim the right to enforce these mortgage obligations. For the unrepresented homeowner, the issues of standing and real party in interest status of the foreclosing party are never considered. Without such scrutiny, there is a risk that the courts will give the judicial “seal of approval” to foreclosures against unrepresented homeowners who have little, if any, understanding of these issues, much less the legal significance thereof. To quote my colleague in Kings County, “Allowing this case to proceed on behalf of a plaintiff without standing at the commencement of the action would [also] open the door to potential fraud and place in jeopardy the integrity of title to *253 the property to be foreclosed.” (Bowling, 2009 NY Slip Op 52567[U], *4.)
It is against this backdrop that the court, on reargument, affirms its prior order of dismissal without prejudice.